UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ADEL BANI HANI, et al. PLAINTIFFS

v. CIVIL ACTION NO. 3:07-CV-517-S

ALBERTO GONZALES, et al. DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court upon motion of the defendants, the United States Citizenship and Immigration Services ("USCIS"), the Federal Bureau of Investigation ("FBI"), the United States Department of Justice, and the United States Department of Homeland Security (collectively "Defendants"), to dismiss in part and remand in part (DN 11). For the reasons set forth herein, the court will grant Defendants' motion.

**BACKGROUND**

Various background checks must be completed prior to the processing of certain immigration applications. Among these background checks is an FBI name check. The FBI name check searches multiple FBI databases to determine whether the FBI has encountered an individual applying for immigration benefits in any investigation. The plaintiffs in this action all assert that they have submitted applications to USCIS for certain immigration benefits and the processing of those applications has been delayed because their FBI name checks have not been completed.

The plaintiffs fall into one of four different categories. The first and second category includes plaintiffs who are lawful permanent residents of the United States that have submitted N-400 naturalization applications to USCIS. The first category of plaintiffs have been interviewed by USCIS but have not received adjudications on their naturalization applications because their FBI name checks are still pending ("Group 1 Plaintiffs"). More than 120 days have passed since Group 1 Plaintiffs'

interviews. The second category of plaintiffs have not have not yet been interviewed by USCIS because their FBI name checks are still pending ("Group 2 Plaintiffs").

The third category includes plaintiffs who live in the United States and seek to become lawful permanent residents ("Group 3 Plaintiffs"). Group 3 Plaintiffs have submitted I-485 applications for permanent residence status but have not yet received adjudications on their applications because their FBI name checks are still pending.[1]

The fourth category includes one plaintiff, Ngan Thi Kim Vo ("Vo"), who is a lawful permanent resident of the United States on a conditional basis. Vo has submitted an I-751 petition to remove conditions on residence. Vo has been interviewed but has not yet received an adjudication on her petition because her FBI name check is still pending. More than 90 days have passed since Vo's interview.

Plaintiffs filed this proposed class action against Defendants on September 28, 2007, asserting causes of action under the Immigration and Nationality Act ("INA"), Mandamus Act, Administrative Procedures Act ("APA"), and the Due Process clause of the United States Constitution. Defendants subsequently filed the instant motion requesting that this court dismiss certain of Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim, and remand certain of Plaintiffs' claims.

**LEGAL STANDARD**

There are two categories of motions to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1): facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d. 592, 598 (6th Cir. 1994). A facial attack challenges the court's subject matter jurisdiction based upon the sufficiency of the pleadings. In considering a facial attack, a court will consider the material allegations of fact set forth in the complaint as being true and construe them in a light most favorable to the nonmoving party. *Id.* A factual attack challenges the court's subject matter jurisdiction based upon the facts as alleged in

---

[1]Group 1, Group 2, and Group 3 Plaintiffs, and Vo, collectively referred to as "Plaintiffs"

the pleadings. In considering a factual attack, a court will not presume the allegations of fact in the complaint to be true, but will weigh the conflicting evidence to determine whether the proper jurisdiction exists. *Id.*

In order to avoid a dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, a plaintiff has an obligation to provide the grounds of his entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). This does "not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. When ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Id.* at 1965.

## DISCUSSION

The court will first address Defendants' motion with respect the claims asserted by Plaintiffs that request this court to either adjudicate or order adjudication of their applications. The court will address these claims with respect to each particular category of Plaintiffs. The court will then address Defendants' motion with respect to Plaintiffs' claims for failure to follow the notice-and-comment requirements of the APA and violation of the Fifth Amendment due process clause.

### I. Claims Requesting Adjudication of Applications

#### A. Group 1 Plaintiffs

Federal courts have jurisdiction to adjudicate naturalization applications in limited circumstances:

> If there is a failure to make a determination [on an application] before the end of the 120-day period after the date on which the examination is conducted... the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). A majority of district courts have held that an applicant's initial interview triggers the 120-day time period referenced in § 1447(b). *See Mostovi v. Secretary of Dept. of Homeland Security*, 2007 WL 1610209, at *2 (S.D.N.Y. June 4, 2007) (collecting cases). Defendants' recognize this fact and concede that because the Group 1 Plaintiffs have been interviewed by USCIS, and because 120 days have passed since Group 1 Plaintiffs were interviewed, this court has jurisdiction over their naturalization applications. This court finds the majority rule persuasive and will exercise jurisdiction over Group 1 Plaintiffs' applications pursuant to 8 U.S.C. § 1447(b).[2]

Generally speaking, a court "should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *Immigration & Naturalization Service v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). "This principle has obvious importance in the immigration context." *Id.*; *see also Immigration & Naturalization Service v. Aguirre-Aguirre*, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (noting that "judicial deference to the Executive Branch is especially appropriate in the immigration context"). More specifically, a district court, like USCIS, is not in a position to make a determination with respect to an application for naturalization until the applicant's "full criminal background check is completed."[3] *See Baig v. Caterisano*, 2008 WL

---

[2] Because this court has jurisdiction over Group 1 Plaintiffs' naturalization applications pursuant to 8 U.S.C. § 1447(b), Group 1 Plaintiffs may not rely on general jurisdictional grants to obtain the relief they seek. *See Antonishin v. Keisler*, 2007 WL 2788841, at *5 (N.D.Ill Sept. 20, 2007).

[3]Before USCIS can adjudicate a petition for naturalization, USCIS is required to conduct a "full criminal background check" on each naturalization applicant. *See* Pub.L.No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448; 8 C.F.R. § 335.2. USCIS has determined that a "full criminal background check" includes: (1) a check against the Interagency Border Inspection System check, which contains records and information from twenty federal law enforcement and intelligence agencies; (2) an FBI fingerprint check, which provides information relating to criminal history within the United States; and (3) an FBI name check.

An applicant's initial examination interview should occur only after USCIS receives "a definitive response from the [FBI] that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2. However, sometimes, as in the case with the Group 1 Plaintiffs, USCIS will conduct the examination of an applicant before a full criminal background check is completed in an attempt to expedite the naturalization process.

631206, at *3 (E.D.Va March 7, 2008). A district court is not equipped to conduct an investigation to determine if an applicant presents any risk to national security or public safety. *El-Daour v. Chertoff*, 417 F.Supp.2d 679, 684 (E.D.Va.2005). To adjudicate Group 1 Plaintiffs' applications without the completion of their background check "would contravene Congress's intent that an FBI background check is to be completed prior to the adjudication of every naturalization application." *Essa v. United States Citizenship & Immigration Service*, 2005 WL 3440827, at *3 (D.Minn. Dec. 14, 2005). Accordingly, the court will not adjudicate Group 1 Plaintiffs' naturalization applications. Rather, the court will remand this matter to USCIS and USCIS is instructed to adjudicate Group 1 Plaintiffs' applications as expeditiously as practical once the results of their background checks are received.

**B. Group 2 Plaintiffs**

Inasmuch as Group 2 Plaintiffs have not yet been interviewed by USCIS, this court cannot exercise jurisdiction over their naturalization applications pursuant to 8 U.S.C. § 1447(b). *See Omar v. Mueller*, 501 F.Supp.2d 636, 641 (D.N.J. 2007). Group 2 Plaintiffs concede this fact, but assert that this court has jurisdiction under the Mandamus Act, 28 U.S.C. 1361, and federal question statute, 28 U.S.C. § 1331, in connection with the APA, 5 U.S.C. §§ 555 and 701 *et seq*.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform any duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is an "extraordinary remedy" which "will issue only to compel the performance of a clear nondiscretionary duty." *Pittson Coal Group v. Sebben*, 488 U.S. 105, 121, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988). Mandamus relief is proper only where plaintiffs establish that: "(1) they have a 'clear and certain claim' to the relief sought; (2) the defendants have a 'nondiscretionary, ministerial' duty to act 'so plainly prescribed as to be free from doubt'; and (3) there is 'no other adequate remedy available.'" *Hanbali*

*v. Chertoff*, 2007 WL 2407232, at *2 (W.D.Ky. Aug. 17, 2007) (quoting, inter alia, *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir.1997)).

The APA empowers the court to compel agency action on the grounds that it has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). In order to invoke jurisdiction under the APA, a plaintiff must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty. *See Norton v. So. Utah Wilderness Alliance*, 542 U.S. 55, 63-65, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004).

Group 2 Plaintiffs cannot establish that Defendants have a nondiscretionary duty to act on a naturalization application prior to the interview which triggers the 120-day period prescribed by 8 U.S.C. § 1447(b). *See Alzuraiki v. Heinauer*, 2008 WL 413861, at *3 (D.Neb. Feb. 13, 2008); *Omar*, 501 F.Supp.2d at 639-40. Indeed, USCIS is prohibited from interviewing Group 2 Plaintiffs until USCIS receives a "definitive response from the [FBI] that a full criminal background check... has been completed." 8 C.F.R. § 335.2. Neither the USCIS nor the FBI have a nondiscretionary duty to complete Group 2 Plaintiffs' name checks within a prescribed period of time. *See Alzuraiki*, 2008 WL 413861, at *4 ("[n]o statute or regulation limits the FBI's discretion in how it completes Plaintiffs background check, let alone the pace at which this check is undertaken"); *Omar*, 501 F.Supp.2d at 640 ("[p]laintiffs... fail to demonstrate that the USCIS or the FBI owe Mr. Omar a duty to complete the background check within a prescribed period of time"). Accordingly, neither the Mandamus Act nor the APA provide this court with jurisdiction over Group 2 Plaintiffs' naturalization applications.[4] Therefore, Group 2

---

[4] The court recognizes that other courts have found that the FBI has a nondiscretionary duty to complete background checks and that the USCIS has a nondiscretionary duty to adjudicate petitions. *See e.g. Hanbali*, 2007 WL 2407232, at *2; *Al Daraji v. Monica*, 2007 WL 2994608, at *4 (E.D.Pa. Oct. 12, 2007). These courts have, therefore, found that subject matter jurisdiction exists under the Mandamus Act and the APA. As recognized in *Hanbali*, "[t]he view [as to whether] a duty [exists] is far from unanimous." 2007 WL 2407232, at *3 n. 1. This court does not find the reasoning of those courts which have found that such nondiscretionary duties exist to be persuasive.

Plaintiffs' claims requesting this court order adjudication of their naturalization applications will be dismissed.

**C. Group 3 Plaintiffs**

Group 3 Plaintiffs also assert that this court has jurisdiction over their applications for permanent residence status under the Mandamus Act and the APA. The INA specifically authorizes the Attorney General[5] to adjust to permanent residence status certain aliens who have been admitted to the United States "in his discretion." 8 U.S.C. § 1255(a). Congress has expressly declared that "no court shall have jurisdiction to review... any... decision or action of the Attorney General or Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion...." 8 U.S.C. § 1252(a)(2)(B). This court will follow those courts that have held that the FBI name check and the adjudication of applications for permanent residence status are matters solely within the FBI's and USCIS's discretion. *See e.g. Zhang v. Chertoff*, 2007 WL 1753538, at *3 (W.D.Va. June 19, 2007); *Safadi v. Howard*, 466 F.Supp.2d 696, 699 (E.D.Va. 2006); *Sozanski v. Chertoff*, 2006 WL 4516968, at *1 (N.D.Tex. Dec. 11, 2006).[6] Accordingly, this court lacks subject matter jurisdiction over Group 3 Plaintiffs' applications and their claims requesting that this court order adjudication of their applications for permanent residence status will be dismissed.

**D. Vo**

Vo asserts that this court has jurisdiction over her petition for removal of conditions on residence under the Mandamus Act and the APA as well. Pursuant to 8 U.S.C. § 1186a(c)(3)(A), after a petitioner

---

[5]The Attorney General's authority with respect to adjudicating applications for immigration benefits has since been transferred to the Secretary of Homeland Security and the USCIS. *See* 6 U.S.C. § 271(b)(5).

[6] The court recognizes that other courts have found a nondiscretionary duty to adjudicate applications for permanent residence status, *see e.g. Liu v. Chertoff*, 2007 WL 1202961, at *3 (C.D.Ill. Apr. 23, 2007); *Song v. Klapakas*, 2007 WL 1101283, at *4 (E.D.Pa. Apr. 12, 2007), but does not find the reasoning of those courts to be persuasive.

for removal of conditions on residence has been interviewed, the Attorney General[7] is required to adjudicate the petition within 90 days of the date of the interview. Vo contends that 8 U.S.C. § 1186a(c)(3)(A) imposes a mandatory, nondiscretionary duty on Defendants to adjudicate petitions for removal of conditions on residence within 90 days of the applicants' interviews. Defendants contend that the 90 day time limit set forth in the statute is not mandatory, but rather directory.

In *Robertson v. Attorney General of the United States*, 957 F.Supp. 1035, 1037 (N.D.Ill 1997), the court found that the 90 day time limit prescribed by 8 U.S.C. § 1186a(c)(3)(A) was merely directory. The *Robertson* court stated that whether a statutory provision is mandatory or directory depends upon on several considerations:

> First, if Congress has failed to specify some sort of penalty or sanction for an agency's failure to comply with a deadline, that deadline is deemed to be directory and not mandatory. *See Brock v. Pierce County*, 476 U.S. 253, 260-62, 106 S.Ct. 1834, 1839-40, 90 L.Ed.2d 248 (1986); *Gottlieb v. Pena*, 41 F.3d 730, 733 (D.C.Cir.1994). In addition, the legislative history and the purpose of the statute are relevant to this characterization. If the legislative history of the statute provides no indication that Congress believed compliance with the duty at issue to be essential to the effective operation of the statute, the duty will be deemed directory. See *Brock*, 476 U.S. at 262-65, 106 S.Ct. at 1840-42; *Gottlieb*, 41 F.3d at 734-36.

957 F.Supp. at 1037. The *Robertson* court noted that neither 8 U.S.C. § 1186a(c)(3)(A) nor its implementing regulation, 8 C.F.R. § 216.4, mention any penalty or sanction for failing to adjudicate a petition for removal of conditions on residence within 90 days. *Id.* The court also noted that nothing in the legislative history of the statute indicates a significant concern with restricting the time in which the Attorney General may act. *Id.* This court finds *Robertson* persuasive and therefore finds that the 90 day time period for adjudication of a petition for removal of conditions on residence is not mandatory, but rather directory.[8] Accordingly, this court lacks subject matter jurisdiction under the Mandamus Act

---

[7] *See* note 5.

[8] The court recognizes that *Robertson* was not followed in *Lazli v. United States Citizenship and Immigration*
(continued...)

and the APA over Vo's petition and her claim requesting that this court order adjudication of her petition will be dismissed.

**II. APA Notice-and-Comment Claims**

Plaintiffs assert that USCIS violated the APA by enacting the FBI name check requirement without providing notice to the public or giving them the opportunity for comment. According to Plaintiffs, the FBI name check "goes beyond the criminal background checks required by statute and regulation." The APA's notice-and-comment requirement does not apply "to interpretative rules." 5 U.S.C. §553(b). Interpretive rules are statements "as to what the administrative officer thinks the statute or regulation means." *Antonishin*, 2007 WL 2788841, at *7 (quoting *Board of Trustees of Knox County Hosp. v. Shalala*, 135 F.3d 493, 500 (7th Cir. 1998)).

Numerous courts have held that in establishing the FBI name check requirement USCIS merely interpreted the scope of the required "full criminal background check," and that FBI name checks are properly included within the parameters of the "full criminal background check." *See Wang v. Gonzales*, 2008 WL 45492, at *2 (D.Kan. Jan. 2, 2008); *Ahmadi v. Chertoff*, 2007 WL 3022573, at *7-9 (N.D.Cal. Oct. 15, 2007); *Antonishin*, 2007 WL 2788841, at *8; *Aman v. Gonzales*, 2007 WL 2694820, at *3 (D.Colo. Sept 10, 2007); *Stepchuk v. Gonzales*, 2007 WL 185013, at *2 (W.D.Wash. Jan 18, 2007). The court finds the reasoning of these courts persuasive. Accordingly, the APA's notice-and-comment requirement is inapplicable to the FBI name check requirement and the Plaintiffs' claims for violation

---

[8](...continued)
*Services*, 2007 WL 496351, at *10 (D.Or. Feb. 12, 2007). The *Lazli* court attempted to distinguish the facts in *Robertson* from those in *Brock* but ultimately stated that "this court need not decide whether the 90-day deadline dictated by the statute and implementing regulation is mandatory or permissive. In either event, defendants have a nondiscretionary duty to make a decision on the [petition for removal of conditions on residence] at some point. This court is persuaded that an implied duty exists to adjudicate immigration applications, including the [petition for removal of conditions on residence], within a reasonable time." This court does not find *Lazli* persuasive.

of the APA's notice-and-comment requirement must be dismissed. *See* 5 U.S.C. § 553(b); *see also Antonishin*, 2007 WL 2788841, at *8; *Ahmadi*, 2007 WL 3022573, at 9.[9]

**III. Due Process Claims**

Plaintiffs also assert that Defendants violated their Fifth Amendment procedural due process rights in failing to adjudicate their various applications in a timely manner. The Fifth Amendment's due process clause prohibits the deprivation of "life, liberty, or property, without due process of law." Plaintiffs asserting due process claims must establish that they have protected interests in liberty or property. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiffs assert that they have a protected interest in having their applications adjudicated.

"No alien has the slightest right to naturalization unless all statutory requirements are complied with." *United States v. Ginsberg*, 243 U.S. 472, 474, 37 S.Ct 422, 61 L.Ed. 853 (1917). "[E]ven if an applicant does meet all of the statutory requirements for naturalization, nothing guarantees that their application must be granted by any date certain." *Ahmadi*, 2007 WL 3022573, at *10. "There is no protected interest in mere process by itself. *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280 n.2, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998).

Group 1 and Group 2 Plaintiffs have not met all statutory requirements for naturalization in that their FBI name checks are still pending. Additionally, even if the statutory requirements were met, the right asserted by Group 1 and Group 2 Plaintiffs cannot form the basis of a due process claim. *See Ahmadi*, 2007 WL 3022573, at *10; *see also Morgovsky v. Department of Homeland Security*, 517 F.Supp.2d 581, 585 (stating under different factual circumstances that "[t]here is no

---

[9] This court recognizes that in *Mocanu v. Mueller*, 2008 WL 372459 (E.D.Pa. Feb. 8, 2008), the court reached the opposite conclusion. This court does not find *Mocanu* persuasive.

protected liberty interest in naturalization beyond that which the Congress has provided by statute. What is at issue in this case is not a denial of Morgovsky's right to be considered for naturalization, but the failure of CIS to adjudicate his petition in as timely a manner as he would like. This may be a denial of desired process, but it is not a denial of due process). Moreover, as naturalization applicants have no protected interest in having their applications adjudicated by any certain date, the court finds that neither do applicants for permanent residence status, such as Group 3 Plaintiffs, or petitioners for removal of conditions on residence, such as Vo. Accordingly, Plaintiffs' due process claims will be dismissed.

A separate order will be entered herein this date in accordance with this opinion.

May 5, 2008

**Charles R. Simpson III, Judge**
**United States District Court**